NO. 07-04-0084-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 18, 2006


______________________________



B.T. HEALTHCARE, INC. d/b/a BENDER TERRACE, 



 Appellant


v.



THURMAN HONEYCUTT, as executor and representative 


 of the estate of RONALD HONEYCUTT, 


 Appellee

_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-516,937; HON. ANDREW J. KUPPER, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 B.T. Healthcare, Inc. d/b/a Bender Terrace (Bender) appeals from a judgment after
a jury trial in favor of Thurman Honeycutt, as executor and representative of the estate of
his brother Ronald Honeycutt (Honeycutt). In four issues, Bender argues that 1) the trial
court erred by failing to apply the applicable settlement credit, 2) the trial court erred by
failing to include IHS Lubbock in the court's jury charge "for purposes of determining
percentages of responsibility," 3) the evidence was legally and factually insufficient to
support the award of medical expenses, and 4) the evidence was legally and factually
insufficient to support the award for pain and suffering. We reverse the judgment and
remand the cause.

Background


 In June 2000, Honeycutt was rendered a quadriplegic at the age of 50 after falling
and hitting his head against a vehicle. Upon receiving treatment for a broken neck at
Covenant Medical Center, he was transferred to IHS Lubbock (a nursing home) in August
2000. Approximately a month later, he was transferred to Bender, another nursing home. 
According to the record, Honeycutt had suffered from pressure (bed) sores since his injury. 
They grew in number and severity while at Bender. This resulted in his return to Covenant
Medical Center in early November of 2000 for treatment. Honeycutt never returned to
Bender but was instead sent to other homes. 

 Honeycutt sued, on July 1, 2002, Bender and IHS Lubbock. IHS Lubbock settled
with Honeycutt before trial for $295,000. The settlement was executed by its parties in
January of 2003. This left Bender as the sole defendant. Moreover, a jury found it 51%
negligent for Honeycutt's injuries, while Honeycutt was found 49% negligent. So too did
it award Honeycutt $350,000 for pain and suffering and $180,000 in medical expenses. 
Based upon the award and percentages of responsibility, the trial court entered judgment
ordering Bender to pay Honeycutt $270,300 in damages, plus interest, and costs. 

Issue One - Settlement Credit 


 Bender initially contends that the trial court erred in failing to give it credit for the
settlement amount ($295,000) paid by the IHS defendants. We sustain the issue.

 The matter before us is reviewed under the standard of abused discretion. Tex.
Capital Sec. v. Sandefer, 108 S.W.3d 923, 925 (Tex. App.-Texarkana 2003, pet. denied). 
Next, and at the time Honeycutt settled with IHS Lubbock, statute required a trial court to
deduct from a claimant's recovery, a sum equal to the claimant's percentage of
responsibility for his own injuries. Tex. Civ. Prac. & Rem. Code Ann. §33.012(a) (Vernon
Supp. 2005). Also included in §33.012 was another provision requiring a reduction in the
claimant's recovery from the remaining defendants when one or more defendants settled. 
The amount of credit was susceptible to calculation under various formulas which the non-settling defendant had the option to select. The formula chosen by Bender entitled it to a
credit equal to "the sum of the dollar amounts of all settlements." Id. §33.012(b) (describing
the options).

 To receive the credit, Bender had the burden to prove its entitlement to same. See
Utts v. Short, 81 S.W.3d 822, 828 (Tex. 2002) (stating that a defendant seeking a
settlement credit has the burden to prove its right to it). Yet, this burden was and is not a
difficult one. Indeed, to obtain a dollar-for-dollar credit, it had only to elect same in writing
before the cause was submitted to the factfinder and assure that the record disclosed the
settlement amount. Id. Upon Bender doing that, Honeycutt had the obligation to show that
certain amounts should not be credited because of the allocation in the settlement
agreement between damages susceptible to credit from those which were not. Id. In other
words, he had the burden to tender a valid settlement agreement allocating the settlement
monies between those subject to use as a credit and those not so subject. Mobil Oil Corp.
v. Ellender, 968 S.W.2d 917, 928 (Tex. 1998) (holding that the settling party must tender
to the trial court a settlement agreement allocating between actual and punitive damages
as a condition precedent to limiting dollar-for-dollar settlement credits to settlement
amounts representing actual damages). Should he fail in this regard, then the non-settling
party is entitled to a credit equaling the entire settlement amount. Id. 

 Here, the settlement agreement executed by Honeycutt and IHS Lubbock did not
expressly segregate funds to be excluded in the calculation of the credit from those to be
included. Honeycutt posits that the agreement nonetheless satisfies the requirements of
Ellender because it demarcates the particular causes of action being settled and those
causes relate solely to the acts of IHS Lubbock. We concede that while the better practice
may be to expressly specify the division contemplated in Ellender, no magic words are
necessary if the agreement nevertheless can be construed as having that effect. Yet, the
wording of the document at bar cannot be so construed. 

 In defining the misfeasance or malfeasance encompassed by the settlement, the
parties wrote:

 Nursing treatment and services rendered or the failure to render medical and
nursing care and treatment to Ronald Honeycutt in connection with his
residency at IHS Acquisition No. 172, Inc. d/b/a IHS Hospital at Lubbock and
IHS Acquisition No. 142, Inc. d/b/a IHS At The Park a/k/a IHS of Plano;
medical and nursing care and treatment rendered by or the failure to render
medical and nursing care and treatment by any employee or agent of any
Released Party (as that term is defined herein); and claims brought or that
could have been brought, events described in and issues related in any way
to the lawsuit styled Thurman Honeycutt, As Executor and Representative
of the Estate of Ronald Honeycutt v. Integrated Health Services, Inc., IHS
Acquisition No. 172, Inc. d/b/a IHS Hospital at Lubbock, B.T. Health Care,
Inc. d/b/a Bender Terrace, Damon H. Hill, Jr., M.D., and IHS Acquisition No.
142, Inc. d/b/a IHS At The Park a/k/a IHS of Plano; Cause No. 2002-516,937;
in the 99th Judicial District Court of Lubbock County, Texas. 


Admittedly, the first two passages ending with a semi-colon can be read as restricting the
scope of the settlement to those bed sores and like injuries caused solely by the conduct
of IHS Lubbock and its personnel. (1) Yet, we cannot ignore the following passage wherein
the parties generally referred to the "claims brought or that could have been brought,
events described in and issues related in any way to the lawsuit styled Thurman Honeycutt
. . . v. Integrated Health Services, Inc. . . . B.T. Health Care, Inc. d/b/a Bender Terrace . .
.Cause No. 2002-516,937." Unlike the former passages, the latter is not restricted simply
to employees and agents of IHS Lubbock or injuries relating to his residency at the IHS
Lubbock facility. Rather, its scope is defined by the claims and issues involved in the suit
against all the defendants. Moreover, through Honeycutt's live pleading at the time of the
settlement, he had expressly sought to hold all the defendants jointly and severally liable
for his injuries. 

 Given the wording of the agreement, its allusion to all the claims and issues
implicated in the suit generally, and Honeycutt's effort to hold all defendants jointly and
severally liable, it cannot be said that the settlement agreement sufficiently allocated the
monies paid by IHS Lubbock to injuries solely caused by IHS Lubbock or its agents and
employees. Thus, as the agreement is written, Honeycutt failed to carry his burden as
imposed by Ellender, and the trial court abused its discretion in refusing to credit the
$295,000 settlement amount against the jury verdict.





Issue Two - Comparative Negligence Instruction


 Bender next argues that the trial court should have submitted the negligence of IHS
Lubbock to the jury. This allegedly would have allowed the factfinder to assign
responsibility for Honeycutt's injuries between all involved. We overrule the issue.

 To the extent that a non-settling defendant is entitled to have a settling defendant's
responsibility determined by a jury, there must, at the very least, be some evidence
establishing that the settling defendant was indeed responsible for the injuries. Kroger Co.
v. Betancourt, 996 S.W.2d 353, 358 (Tex. App.-Houston [14th Dist.] 1999, pet. denied). In
other words, evidence must appear of record illustrating that IHS Lubbock had a duty to act
according to a certain standard of care, that it breached the duty, and that the breach was
a substantial factor in causing the injury for which damages were sought. See Schneider
v. Haws, 118 S.W.3d 886, 889 (Tex. App.-Amarillo 2003, no pet.) (describing the elements
of a healthcare liability claim); see also Columbia Medical Center of Las Colinas v.
Bush,122 S.W.3d 835, 852 (Tex. App.-Fort Worth 2003, pet. denied) (stating that
causation is established when the negligent act or omission is shown to be a substantial
factor in bringing about the harm and without which the harm would not have occurred).

 While Bender cites us to evidence suggesting that IHS Lubbock or its employees
may have violated an applicable standard of care, it cites us to none suggesting that the
violations proximately caused the injuries for which recovery was sought from Bender. For
instance, while a nurse testified that personnel of IHS Lubbock breached the standard of
care required of them, we are not cited to any evidence showing that the purported injuries,
if any, caused by the breach were the ones underlying Honeycutt's claim against Bender. 
This distinction is of import for the allegations against Bender in Honeycutt's live pleading
illustrate that he was seeking from Bender damages for injuries caused by Bender while
he was solely in its care. Thus, it was incumbent upon Bender to direct us to some
evidence sufficient to support a finding that the acts or omissions of IHS Lubbock were
somehow a substantial factor in causing those particular injuries. Most Worshipful Prince
Hall Grand Lodge v. Jackson, 732 S.W.2d 407, 412 (Tex. App.-Dallas 1987, writ ref'd
n.r.e.) (requiring the appellant to cite to those portions of the record that support its
argument). Since it did not, and because it is not our duty to peruse the 17 volume
reporter's record for that information, Barnett v. Coppell N. Texas Court, Ltd., 123 S.W.3d
804, 817 (Tex. App.-Dallas 2003, pet. denied) (holding that an appellate court has no duty
to sua sponte review the record to find evidence supporting the appellant's argument),
Bender failed to establish that the trial court abused its discretion in denying the submission
in dispute.

Issue Three - Sufficiency of Evidence of Medical Expenses


 Bender next argues that the evidence was legally and factually insufficient to support
the jury's $180,000 award of medical expenses. This is so, it contends, because the
$180,000 included medical expenses unrelated to recompensing the injuries caused by
Bender. In other words, Honeycutt allegedly was obligated to segregate those medical
expenses incurred in treating the bed sores caused by Bender from those incurred due to
the treatment of other ailments unrelated to Bender's misfeasance or malfeasance. We
sustain the issue.

 One cannot legitimately question that a defendant generally is liable only for those
medical expenses incurred incident to his misconduct. For this reason, a plaintiff may
recover only for reasonable and necessary medical expenses specifically shown to result
from treatment made necessary by the negligent acts or omissions of the defendant, Linan
v. Rosales, 155 S.W.3d 298, 306 (Tex. App.-El Paso 2004, pet. denied); see Walker v.
Ricks, 101 S.W.3d 740, 747 (Tex. App.-Corpus Christi 2003, no pet.) (stating that there
must be a nexus between the injury and the medical expenses). And, the presentation of
medical bills alone does not establish that link. Smith v. Southwestern Bell Tel. Co., 101
S.W.3d 698, 702 (Tex. App.-Fort Worth 2003, no pet.). 

 Here, evidence appears of record disclosing that the reasonable and necessary
medical expenses relating to the treatment of Honeycutt's bed sores were included in the
$180,000 sum. However, the testimony failed to illustrate that the entire sum was
comprised of such expenses. Indeed, in addition to the pressure sores, appellant suffered
from pneumonia and a urinary tract infection when admitted into and securing treatment
from the hospital. So too did he suffer from diabetes, chronic obstructive pulmonary
disease, ankylosing spondylosis, and an arthritic condition. Moreover, in the medical
expenses were included such items as the cost of glucose sticks, chest and shoulder x-rays, nebulizer treatments, a hot/cold pack for physical therapy, speech therapy, a nutrition
consultant, occupational therapy, and air fluidize therapy. According to Bender, no
evidence illustrates that these expenses were related to the treatment of Honeycutt's sores,
and we agree. Because the evidence showed that there were multiple conditions to be
treated but no evidence segregates the expenses incurred in treating the conditions caused
by Bender from those that were not, the cause must be remanded for further proceedings. 
See Texarkana Memorial Hospital v. Murdock, 946 S.W.2d 836, 840 (Tex. 1997)
(remanding the cause for new trial because the record failed to contain evidence
segregating past medical expenses arising from the conduct of the hospital from those
unrelated to that conduct). 

Issue Four - Sufficiency of the Evidence as to Pain and Suffering 


 In its final issue, Bender challenges the legal and factual sufficiency of the evidence
underlying the jury's award for pain and suffering. We overrule the issue.

 Only pain consciously suffered and experienced is compensable. SunBridge
Healthcare Corp. v. Penny, 160 S.W.3d 230, 248 (Tex. App.-Texarkana 2005, no pet.); Lee
Lewis Construction, Inc. v. Harrison, 64 S.W.3d 1, 14 (Tex. App.-Amarillo 1999), aff'd, 70
S.W.3d 778 (Tex. 2001). Furthermore, its existence may be established by circumstantial
evidence, SunBridge Healthcare Corp. v. Penny, 160 S.W.3d at 248, or inferred or
presumed as a consequence of severe injuries. Lee Lewis Construction, Inc. v. Harrison,
64 S.W.3d at 14. And though not unbridled, a jury's discretion in considering the evidence
and arriving at a justifiable sum is great. Lee Lewis Construction, Inc. v. Harrison, 64
S.W.3d at 14. With this in mind, we turn to the evidence in question.

 Here, Bender alleges that the location of Honeycutt's quadriplegia rendered him
unable to experience any pain caused by the pressure wounds. Yet, evidence appears of
record illustrating that quadriplegics indeed may "have deep primitive sensations through
their autonomic nervous system. . . ." So too could they generally, and Honeycutt in
particular, "feel a deep pain, or nausea, or have other symptoms" caused by wounds. 
Additionally, it was noted that Honeycutt's chief complaint appearing on the hospital
admission form was "[b]uttock pain," and one physician interpreted this as meaning that
Honeycutt was experiencing pain from his pressure ulcers. Other evidence disclosed that
on November 8, 2000, Honeycutt was transferred to the emergency room for treatment of
"decubes" and that he was in a lot of pain due to "decubes." (2) Furthermore, Honeycutt's
brother testified that family members would try to reposition Honeycutt but they could not
touch him around "any of the sore areas" without him uttering "an excruciating scream." 
Also of record is evidence that he experienced pain when moved or turned. When taken
together, this data constitutes more than a scintilla of evidence upon which a rational jury
could reasonably reject Bender's hypothesis about a quadriplegic's inability to experience
pain and conclude that Honeycutt actually did. So, we find that the award for pain and
suffering is supported by legally sufficient evidence. And, to the extent that other evidence
contradicted the foregoing, it was for the jury to resolve the conflict. It having done so in
favor of Honeycutt, we cannot say that the determination was or is against the great weight
and preponderance of the evidence so as to be manifestly unjust.

 Having sustained issue three, we reverse the judgment and remand the entire cause
for new trial. Tex. R. App. P. 44.1(b) (barring an appellate court from ordering a separate
trial solely on unliquidated damages if liability is contested); Estrada v. Dillon, 44 S.W.3d
558, 562 (Tex. 2001) (holding that the entire cause must be remanded if liability was
contested at trial but not on appeal); see Texarkana Memorial Hospital v. Murdock, 946
S.W.2d 840 (reversing the entire cause because recoverable medical expenses were not
segregated from unrecoverable expenses). 


 Brian Quinn 

 Chief Justice

 
1. We note that in his live pleading Honeycutt described how some of the sores could not have been
caused by IHS Lubbock because they did not come into existence until he was transferred to Bender. 
2. A decubitus ulcer is a bedsore.